JANIS M. SMITH, ESQUIRE
428 W. First Avenue, Suite C
Parkesburg, PA  19365
610-857-9401
Attorney I. D. #37217

---

## UNITED STATES BANKRUPTCY COURT
### Eastern District of Pennsylvania

In re:                                    : Chapter 13
Bertha M. Hamilton
801 Charles Street                        : Case #12-19762
Coatesville, PA  19320
                                          :

v.                                        :

Partners for Payment Relief DE III, LLC   :
3748 West Chester Pike, Suite 103
Newtown Square, PA  19073                 :

                                          :

### COMPLAINT TO DETERMINE VALIDITY OF LIEN OF PARTNERS FOR PAYMENT RELIEF DE III, LLC

1. The instant complaint is filed by the Debtor, pursuant to Bankruptcy Rule 7001 to determine the extent and validity of any lien asserted by the defendant, Partners for Payment Relief DE III, LLC, (hereinafter "Partners"), and pursuant to 11 U.S.C. §506 to determine the extent to which any claim which may be filed by Defendant pursuant to a mortgage on the property more fully described below is a secured claim and the extent to which it is an unsecured claim; to declare that any such claim which may be filed by the Defendant pursuant to the aforesaid mortgage is unsecured, per 11 U.S.C. §506, and praying that the Honorable Court enter an Order, directing the Defendant to void and/or vacate the mortgage held by the Defendant upon the property of the Plaintiff, and to have such voidance or vacation recorded with the Recorder of Deeds of Chester County, Pennsylvania, as such or as a satisfaction.

1

## II.  Jurisdiction

2.  Debtors filed the present Chapter 13 case on October 19, 2012.  This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. §157.

## III.  Parties

3.  The Plaintiff is Bertha M. Hamilton, a natural person, residing at 801 Charles Street, Coatesville, Chester County, Pennsylvania 19320.

4.  The Defendant is:  Partners for Payment Relief DE III, LLC, d/b/a MERS, Inc., as nominee for Aegis Funding Corp., d/b/a Aegis Home Equity, ("Partners"), having its primary office for the conduct of business at:  3748 West Chester Pike, Suite 103, Newtown Square, PA  19073.

5.  The Trustee is William C. Miller, Esquire, Standing Chapter 13 Trustee for the United States Bankruptcy Court for the Eastern District of Pennsylvania, and Trustee in the Plaintiff Debtors' Chapter 13 case.

## IV. Allegations of Fact

6.  On or about 3/29/2002, the Plaintiff did purchase the real estate at:  801 Charles Street, Coatesville, Chester County, Pennsylvania, as her primary residence.

7.  Co-owner and Co-mortgagor, Charles Hunt, is deceased.

8.  During and subsequent to that purchase, the Plaintiff has executed two (2) mortgages.  The first mortgage, by filing priority, was granted in favor of Chase Manhattan Mortgage, (hereinafter "Chase"), the second mortgage to "Partners".

9.  At the time of filing, the first mortgage company, "Chase", has a balance due of approximately $113,100.60.

10.  The second mortgage, originally taken on 6/2004, "Partners", has a principal balance of approximately $63,681.01, Proof of Claim, filed 10/24/2012, (See Exhibit "B", Proof of Claim).

11.  On or about October 5, 2012, at the behest of the Plaintiff, an appraisal of the property was performed by Petersheim and Longenecker Appraisals Co.  Said appraisal was done just prior to the filing of the Chapter 13 bankruptcy of the Plaintiff, but the interim between the two events has no material effect on the value.

12.  Said appraisal report indicates that the property in question is currently worth $117,000.00, (See Exhibit "C", Appraisal).

13.  Plaintiff believes, and therefore avers, that the net value of the property is less than the payoff amount of the first mortgage.

14.  Therefore, the second mortgage held by the Defendant(s) is now wholly unsecured.

15.  To date, the first mortgagor, Chase Manhattan Bank, has not filed a Proof of Claim in the underlying Chapter #13 Case (claim was verified by telephone); the 2nd mortgage company, Partners for Payment Relief DE III, LLC, has filed a Proof of Claim in the underlying Chapter #13 Case.

16.  Pursuant to 11 U.S.C. §506, Plaintiff believes that the debt or obligation owed by Plaintiff to the defendant, the Partners for Payment Relief DE III, LLC, the holder of the second mortgage upon Debtor's home should be reclassified by your Honorable Court as completely unsecured, any lien held by the Defendant against the property in question should be declared null and void, and any claim which the Defendant may file on the above-referenced second mortgage claim be declared to be wholly unsecured.

WHEREFORE, Plaintiff prays your Honorable Court enter verdict in favor of Plaintiff and against Defendant, reclassifying any claim filed by the Defendant based upon the aforementioned mortgage upon the premises, from secured to unsecured, striking or otherwise modifying any such Proof of Claim which is filed by the Defendant to show that the debt in questions is wholly unsecured; and

Ordering the Defendant to void or otherwise vacate the second mortgage on the premises at 801 Charles Street, Coatesville, Chester County, Pennsylvania 19320, and have such order recorded with the Recorder of Deeds of Chester County, Pennsylvania, or in the alternative, marking said mortgage as "satisfied" on the records of the Recorder of Deeds, within thirty days of the entry of the Order of your Honorable Court, and to deliver same to counsel for the Plaintiff, at no cost or charge for such cancellation and delivery; and   Granting such other relief as the Court may determine to be proper and just.

Date: _____1/2/2013_____                    _____Janis M Smith_____

Janis M. Smith, Esquire
428 W. First Avenue, Suite C
Parkesburg, PA  19365
Telephone 610-857-9401
Fax 610-857-9483
janissmith@comcast.net

# CHASE ⬡

**MORTGAGE/LOAN STATEMENT**

| | |
|---|---|
| Loan Number: | 1965339580 |
| Statement Date: | 09/26/12 |
| Payment Due Date: | 07/01/12 |
| Interest Rate: | 5.50000% |
| Property Address: | 801 Charles St |
| | Coatesville, PA  19320 |

Customer Care Phone:    1-800-848-9380
Hearing Impaired:
1-800-582-0542 (TDD)

**Loan Information:**

| | |
|---|---|
| Principal Balance | $108,983.59 |
| Total Principal Balance | $108,983.59 |
| Escrow Balance | ($134.07) |

**Payment Factors:**

| | |
|---|---|
| Principal & Interest | $825.95 |
| Escrow Payment | $346.23 |
| **Monthly Payment Due** | **$1,172.18** |
| Past Due Payment | ($3,516.54) |
| Unpaid Late Charges | ($1,674.98) |
| Fees/Advances/Other Bal | $0.00 |
| **Total** | **$6,363.70** |

**Year-to-Date:**

| | |
|---|---|
| Interest Paid | $3,537.88 |
| Taxes Paid | $3,623.79 |
| Principal Paid | $2,243.77 |
| Insurance Paid | $574.00 |

07142 MSD Z 27012 C · BRE
BERTHA HAMILTON
801 CHARLES ST
COATESVILLE PA 19320-2918

As a Chase customer, you can choose from a variety of convenient payment options. Visit chase.com/WaysToPay for more information.

## Activity Since Your Last Statement

| TRANSACTION DESCRIPTION | TRANSACTION DATE | TOTAL RECEIVED | PRINCIPAL | INTEREST | ESCROW | OPTIONAL PRODUCTS | MISCELLANEOUS OR FEES |
|---|---|---|---|---|---|---|---|
| SCHOOL TAX | 08/07/12 | | | | ($2,433.71) | | |
| SERVICES CHASE PAID | 09/13/12 | | | | | | $14.00 |

## Important Messages About Your Account

Your account is past due.  If you have not already contacted our Collections Department, please do so immediately at 1-800-848-9380, Monday through Thursday, from 8:00 a.m. to 12:00 a.m., Friday from 8:00 a.m. to 10:00 p.m. and Saturday, 8:00 a.m. to 5:00 p.m.

see bank forebearance until
2/12 —
Then 8800 due (first said 900)

may & put past due

"A"

Eastern Time.
**This is an attempt to collect a debt and any information obtained will be used for that purpose.**

**Your new, easier-to-read mortgage statement is coming next month.** We asked customers like you to tell us how we could improve our mortgage statements. We listened to their ideas and used them to build a better statement. Next month you'll see the results of those conversations: an easier-to-read statement with all the information you need-right where you want it.

IMPORTANT NOTICE TO SERVICEMEMBERS AND THEIR DEPENDENTS
If you are a federal or state military servicemember who is, or within the last year was, on "active duty" or "active service," or a dependent of such a servicemember, you may be entitled to certain legal rights and protections. For more information you may contact Chase Military Services toll free at 877-469-0110 to discuss your status.

**Chase has many programs and benefits available to meet the unique needs of our military and veteran customers and their families. For more information, visit ChaseMilitary.com**

If you receive or expect to receive an insurance claim check for damages to your home, visit www.chase.com/InsuranceClaim for information about the claim process. You can also call us at 866-742-1461 from 8:00 a.m. to 12:00 a.m ET, Monday through Thursday, and 8:00 a.m. to 10:00 p.m. ET on Friday, with any additional questions.

0000001 CHFS008 120926 Page 1 of 1   07142

---

Please detach and return the bottom portion of this statement with your payment using the enclosed envelope

00019653395801  313000  00117218  00121348  00636370  00001

**Please tell us how you want us to apply your funds.** If you do not tell us how to apply them, the funds may not be applied as you wish and this could cause delays.

*Scheduled payments received 15 or more days after the Scheduled Due Date are subject to a late fee of $41.30.

☐ Check box if address change is documented on the back.

‖‖‖₁ₗₗ₁ₗ‖‖₁ₗ‖₁ₗ‖₁ₗₗₗ₁ₗ‖₁ₗ‖₁ₗₗ‖₁ₗ₁ₗ‖₁ₗ‖₁ₗ‖‖
CHASE
PO BOX 78420
PHOENIX AZ 85062-8420

| Loan Number: 1965339580 | | |
|---|---|---|
| BERTHA HAMILTON | | |
| Mortgage Payment | $1,172.18 | $ |
| Payments Past Due | $3,516.54 | $ |
| Unpaid Late Charges | $1,674.98 | $ |
| If applicable, add $41.30 | | |
| Fees/Adv/Oth Bal | $0.00 | $ |
| Total | $6,363.70 | |
| Additional Principal | | $ |
| Additional Escrow (Tax and Insurance) | | $ |
| Total Amount Enclosed | | $ |

Check box for making multiple full payments. ☐

⑈500005026⑈ 000١9653395801⑈

B 10 (Official Form 10) (12/11)

| UNITED STATES BANKRUPTCY COURT   Eastern District of Pennsylvania | PROOF OF CLAIM |
|---|---|

| Name of Debtor:<br>Bertha Hamilton | Case Number:<br>12-19762-elf |
|---|---|

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

**FILED**
**OCT 24 2012**
TIMOTHY MCGRATH, CLERK
BY_____ CLERK

Name of Creditor (the person or other entity to whom the debtor owes money or property):
Partners for Payment Relief DE III, LLC

Name and address where notices should be sent:
Partners for Payment Relief DE III, LLC
3748 West Chester Pike, Suite 103
Newtown Square, PA 19073

Telephone number:  (888) 879-4997   email:

◻ COURT USE ONLY

◻ Check this box if this claim amends a previously filed claim.

Court Claim Number:_____
   (If known)

Filed on:_____

Name and address where payment should be sent (if different from above):



Telephone number:   email:

◻ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

1. Amount of Claim as of Date Case Filed:   $   63,681.01

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☑ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim.  Attach a statement that itemizes interest or charges.

2. Basis for Claim:   Real Estate/Second Mortgage
   (See instruction #2)

| 3. Last four digits of any number by which creditor identifies debtor:<br>1  0  0  7 | 3a. Debtor may have scheduled account as:<br><br>(See instruction #3a) | 3b. Uniform Claim Identifier (optional):<br><br>(See instruction #3b) |
|---|---|---|

4. Secured Claim (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

Nature of property or right of setoff: ☑ Real Estate  ◻ Motor Vehicle  ◻ Other
Describe:

Value of Property: $_____

Annual Interest Rate 12.750 % ☑ Fixed  or  ◻ Variable
(when case was filed)

Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:

$   19,422.33

Basis for perfection:  Second Mortgage

Amount of Secured Claim:   $   63,681.01

Amount Unsecured:   $_____

5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

◻ Domestic support obligations under 11 U.S.C. § 507 (a)(1)(A) or (a)(1)(B).

◻ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4).

◻ Contributions to an employee benefit plan – 11 U.S.C. § 507 (a)(5).

◻ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507 (a)(7).

◻ Taxes or penalties owed to governmental units – 11 U.S.C. § 507 (a)(8).

◻ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a)(___).

Amount entitled to priority:

$_____

*Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

6. Credits. The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

"B"

B 10 (Official Form 10) (12/11)    2

**7. Documents:** Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and redacted copies of documents providing evidence of perfection of a security interest are attached. *(See instruction #7, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**8. Signature:** (See instruction #8)

Check the appropriate box.

☑ I am the creditor.    ☐ I am the creditor's authorized agent.    ☐ I am the trustee, or the debtor,    ☐ I am a guarantor, surety, indorser, or other codebtor.
(Attach copy of power of attorney, if any.)    or their authorized agent.    (See Bankruptcy Rule 3005.)
(See Bankruptcy Rule 3004.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name:  John Sweeney
Title:  Vice President
Company:  Partners for Payment Relief DE III, LLC
Address and telephone number (if different from notice address above):

_____
_____
_____
Telephone number:  _____  email: _____

(Signature)    10·19·12    (Date)

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

---

**INSTRUCTIONS FOR PROOF OF CLAIM FORM**

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*

Items to be completed in Proof of Claim form

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. § 507 (a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, attach a complete copy of any power of attorney, and provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

B 10A (Attachment A) (12/11)

# Mortgage Proof of Claim Attachment

If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See Bankruptcy Rule 3001(c)(2).

| | | | |
|---|---|---|---|
| Name of debtor: | Bertha Hamilton | Case number: | 12-19762-elf |
| Name of creditor: | Partners for Payment Relief DE III, LLC | Last four digits of any number you use to identify the debtor's account: | 1  0  0  7 |

## Part 1: Statement of Principal and Interest Due as of the Petition Date

Itemize the principal and interest due on the claim as of the petition date (included in the Amount of Claim listed in Item 1 on your Proof of Claim form).

1. Principal due                                                                                      (1)  $ 46,240.05

2. Interest due

| Interest rate | From mm/dd/yyyy | To mm/dd/yyyy | Amount |
|---|---|---|---|
| 12.75 % | 03/14/2010 | 10/17/2012 | $ 17,440.96 |
| ___ % | _____ | _____ | $ _____ |
| ___ % | _____ | _____ | + $ _____ |

Total interest due as of the petition date    $ 17,440.96    Copy total here ▶ (2) + $ 17,440.96

3. Total principal and interest due                                                          (3)  $ 63,681.01

## Part 2: Statement of Prepetition Fees, Expenses, and Charges

Itemize the fees, expenses, and charges due on the claim as of the petition date (included in the Amount of Claim listed in Item 1 on the Proof of Claim form).

| Description | Dates Incurred | | Amount |
|---|---|---|---|
| 1. Late charges | 03/14/2010-10/17/2012 | (1) | $ 831.90 |
| 2. Non-sufficient funds (NSF) fees | _____ | (2) | $ _____ |
| 3. Attorney's fees | 03/13/2012-10/17/2012 | (3) | $ 1,400.00 |
| 4. Filing fees and court costs | _____ | (4) | $ _____ |
| 5. Advertisement costs | _____ | (5) | $ _____ |
| 6. Sheriff/auctioneer fees | _____ | (6) | $ _____ |
| 7. Title costs | _____ | (7) | $ _____ |
| 8. Recording fees | _____ | (8) | $ _____ |
| 9. Appraisal/broker's price opinion fees | _____ | (9) | $ _____ |
| 10. Property inspection fees | _____ | (10) | $ _____ |
| 11. Tax advances (non-escrow) | _____ | (11) | $ _____ |
| 12. Insurance advances (non-escrow) | _____ | (12) | $ _____ |
| 13. Escrow shortage or deficiency (Do not include amounts that are part of any installment payment listed in Part 3.) | _____ | (13) | $ _____ |
| 14. Property preservation expenses. Specify:_____ | _____ | (14) | $ _____ |
| 15. Other. Specify:_____ | _____ | (15) | $ _____ |
| 16. Other. Specify:_____ | _____ | (16) | $ _____ |
| 17. Other. Specify:_____ | _____ | (17) + | $ _____ |
| 18. Total prepetition fees, expenses, and charges. Add all of the amounts listed above. | | (18) | $ 2,231.90 |

B 10A (Attachment A) (12/11)                                                                          Page 2

## Part 3. Statement of Amount Necessary to Cure Default as of the Petition Date

Does the installment payment amount include an escrow deposit?

■ No

☐ Yes   Attach to the Proof of Claim form an escrow account statement prepared as of the petition date in a form consistent with applicable nonbankruptcy law.

| | | | | | |
|---|---|---|---|---|---|
| 1. Installment payments due | Date last payment received by creditor | | 06/09/2004 *mm/dd/yyyy* | | |
| | Number of installment payments due | (1) | 31 | | |
| 2. Amount of installment payments due | 31 Installments @ | $ | 554.53 | | |
| | _____ Installments @ | $ | | | |
| | _____ Installments @ | + $ | | | |
| | Total installment payments due as of the petition date | $ | 17,190.43 | Copy total here ► (2) $ | 17,190.43 |
| 3. Calculation of cure amount | Add total prepetition fees, expenses, and charges | | | Copy total from Part 2 here ► + $ | 2,231.90 |
| | Subtract total of unapplied funds (funds received but not credited to account) | | | - $ | |
| | Subtract amounts for which debtor is entitled to a refund | | | - $ | |
| | Total amount necessary to cure default as of the petition date | | | (3) $ | 19,422.33 |

Copy total onto Item 4 of Proof of Claim form

Loan No: 94005463
Borrower: BERTHA HAMILTO|

Data ID: 180

# NOTE

MIN: 100014700940054635

## SECONDARY MORTGAGE LOAN

### This agreement is subject to the provisions of the Secondary Mortgage Loan Act.

June 9, 2004

COATESVILLE
[City]

PENNSYLVANIA
[State]

801 CHARLES ST
COATESVILLE, PENNSYLVANIA 19320
[Property Address]

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $ 50,000.00 (this amount will be called "principal"), plus interest, to the order of the Lender. The Lender is AEGIS FUNDING CORP DBA AEGIS HOME EQUITY. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note will be called the "Note Holder."

**2. INTEREST**

I will pay interest at a yearly rate of 12.750%.

Interest will be charged on unpaid principal until the full amount of principal has been paid.

**3. PAYMENTS**

I will pay principal and interest by making payments each month of U.S. $ 554.53.

I will make my payments on the fourteenth day of each month beginning on July 14, 2004. I will make these payments every month until I have paid all of the principal and interest and any other charges, described below, that I may owe under this Note. If, on June 14, 2029, I still owe amounts under this Note, I will pay all those amounts, in full, on that date.

I will make my monthly payments at 5208 W RENO #255, OKLAHOMA CITY, OKLAHOMA 73127, or at a different place if required by the Note Holder.

**4. BORROWER'S FAILURE TO PAY AS REQUIRED**

(A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be U.S. $27.73. I will pay this late charge only once on any late payment.

**PENNSYLVANIA**—SECOND MORTGAGE · 1/80 · FNMA/FHLMC UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna 8/03

Form 3939     (Page 1 of 3 Pages)

INITIALS:  _BH_     _CH_

Loan No: 94005463

**(B) Default**
If I do not pay the full amount of each monthly payment by the date stated in Section 3 above, I will be in default.
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described below, the Note Holder will still have the right to do so if I am in default at a later time.

**(C) Notice from Note Holder**
If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or, if it is not mailed, 30 days after the date on which it is delivered to me.

**(D) Payment of Note Holder's Costs and Expenses**
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back for its costs and expenses to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees to the extent not prohibited by applicable law.

**5. THIS NOTE SECURED BY A MORTGAGE**
In addition to the protections given to the Note Holder under this Note, a Mortgage, dated June 9, 2004, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Mortgage describes how and under what conditions I may be required to make immediate payment in full of all amounts which I owe under this Note.

**6. BORROWER'S PAYMENTS BEFORE THEY ARE DUE**
I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in a letter that I am doing so. A prepayment of all of the unpaid principal is known as a "full prepayment." A prepayment of only part of the unpaid principal is known as a "partial prepayment."
I may make a full prepayment or a partial prepayment without paying any penalty. I may make a full prepayment at any time. If I choose to make a partial prepayment, the Note Holder may require me to make the prepayment on the same day that one of my monthly payments is due. The Note Holder may also require that the amount of my partial prepayment be equal to the amount of principal that would have been part of my next one or more monthly payments. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no delays in the due dates or changes in the amounts of my monthly payments unless the Note Holder agrees in writing to those delays or changes.

**7. BORROWER'S WAIVERS**
I waive my rights to require the Note Holder to do certain things. Those things are: (A) to demand payment of amounts due (known as "presentment"); (B) to give notice that amounts due have not been paid (known as "notice of dishonor"); (C) to obtain an official certification of nonpayment (known as a "protest"). Anyone else who agrees to keep the promises made in this Note, or who agrees to make payments to the Note Holder if I fail to keep my promises under this Note, or who signs this Note to transfer it to someone else also waives these rights. These persons are known as "guarantors, sureties and endorsers."

**8. GIVING OF NOTICES**
Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail addressed to me at the Property Address above. A notice will be delivered or mailed to me at a different address if I give the Note Holder a notice of my different address.
Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3 above. A notice will be mailed to the Note Holder at a different address if I am given a notice of that different address.

*(Page 2 of 3 Pages)*

INITIALS: *BH*    *CH*

Loan No: 94005463

Data ID: 180

**9. RESPONSIBILITY OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each of us is fully and personally obligated to pay the full amount owed and to keep all of the promises made in this Note. Any guarantor, surety, or endorser of this Note (as described in Section 7 above) is also obligated to do these things. The Note Holder may enforce its rights under this Note against each of us individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note. Any person who takes over my rights or obligations under this Note will have all of my rights and must keep all of my promises made in this Note. Any person who takes over the rights or obligations of a guarantor, surety, or endorser of this Note (as described in Section 7 above) is also obligated to keep all of the promises made in this Note.

**10. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

.......................*Bertha Hamilton*.............(Seal)
BERTHA HAMILTON —Borrower

.......................*Charlean H. Hunt*.............(Seal)
CHARLES H HUNT —Borrower

*[Sign Original Only]*

PAY TO THE ORDER OF
RESIDENTIAL FUNDING CORPORATION
WITHOUT RECOURSE
AEGIS MORTGAGE CORP.

*Clarence M*

Clarence McCovery
VP and Asst. Secretary

PAY TO THE ORDER OF  **AEGIS MORTGAGE CORP.**

WITHOUT RECOURSE

AEGIS FUNDING CORP DBA AEGIS HOME EQUITY

By: *Clarence M* _____

Its: _____
(Printed Name and Title)

Clarence McCovery
VP and Asst. Secretary

PAY TO THE ORDER OF
JP MORGAN CHASE BANK, AS TRUSTEE
WITHOUT RECOURSE
Residential Funding Corporation

By *Judy Faber*
Judy Faber, Vice President

*(Page 3 of 3 Pages)*

Prepared By:
Ann Macheak,
GMAC MORTGAGE, LLC
2925 Country Dr
PO BOX 780
St Paul, MN 55117
1-800-766-4622



When Recorded Return To:

Partners For Payment Relief LLC
3748 W. Chester Pike, Ste 103
Newtown Square, PA 19073



Being UPI# 16-8-1.4

---

### CORPORATE ASSIGNMENT OF MORTGAGE

**Chester, Pennsylvania**
**SELLER'S SERVICING #:7302780838 "HAMILTON"**

**MERS #: 100014700940054635 SIS #: 1-888-679-6377**

Date of Assignment: February 24th, 2012
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC. AS NOMINEE FOR AEGIS FUNDING DBA AEGIS HOME EQUITY, ITS SUCCESSORS AND/OR ASSIGNS
Assignee: PARTNERS FOR PAYMENT RELIEF DE III, LLC

I hereby certify the precise address of the within named Assignor is 1901 E VOORHEES STREET, SUITE C, DANVILLE, IL 61834.

I hereby certify the precise address of the within named Assignee is 3748 WEST CHESTER PIKE, SUITE 103, NEWTOWN SQUARE, PA 19073.

Executed By: BERTHA HAMILTON A ND CHARLES H HUNT  To: MERS, AEGIS FUNDING DBA AEGIS HOME EQUITY
Date of Mortgage: 06/09/2004 Recorded: 06/23/2004 In Book/Reel/Liber: 6198 Page/Folio: 1397 as Instrument/Document: 10427811 In the County of Chester, State of Pennsylvania.
801 CHARLES ST, COATESVILLE, PA 19320 In the Township of COATESVILLE

I do certify that the precise address of PARTNERS FOR PAYMENT RELIEF DE III, LLC is 3748 WEST CHESTER PIKE, SUITE 103, NEWTOWN SQUARE, PA 19073
Attested By: _Ann Macheak_
801 CHARLES ST, COATESVILLE, PA 19320 In the Township of COATESVILLE

   KNOW ALL MEN BY THESE PRESENTS that in consideration of the sum of TEN and NO/100ths DOLLARS and other good and valuable consideration, paid to the above named Assignor, the receipt and sufficiency of which is hereby acknowledged, said Assignor hereby assigns unto the above-named Assignee, the said Mortgage having an original principal sum of $50,000.00 with interest, secured thereby, with all moneys now owing or that may hereafter become due or owing in respect thereof, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said assignor hereby grants and conveys unto the said assignee, the

*AM*AM2GMAC*02/24/2012 01:39:51 PM* GMAC01GMACA00000000000000003529244* PACHEST* 7302780838 PACHEST_MORT_ASSIGN_ASSN **AM2GMAC*

This Document Recorded
03/06/2012
01:50PM
Doc Code: A&M Chester County, Recorder of Deeds Office

Doc Id  11164277
Receipt #  60 9211
Rec Fee: $2.00



11164277
B-8375 P-980

CORPORATE ASSIGNMENT OF MORTGAGE Page 2 of 2

assignor's beneficial Interest under the Security Instrument.

TO HAVE AND TO HOLD the said Security Instrument, and the said property unto the said assignee forever, subject to the terms contained in said Security Instrument.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC. AS NOMINEE FOR AEGIS FUNDING DBA AEGIS HOME EQUITY, ITS SUCCESSORS AND/OR ASSIGNS
On _____

By: _____
PATRICIA KELLEHER, Assistant Secretary

STATE OF Iowa
COUNTY OF Black Hawk

On _____ before me, RACHEL MOORE, a Notary Public in and for Black Hawk in the State of Iowa, personally appeared PATRICIA KELLEHER, Assistant Secretary of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC. AS NOMINEE FOR AEGIS FUNDING DBA AEGIS HOME EQUITY, ITS SUCCESSORS AND/OR ASSIGNS, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

RACHEL MOORE
Notary Expires: 09/23/2013 #764817

RACHEL MOORE
COMMISSION NO. 764817
MY COMMISSION EXPIRES
September 23, 2013

(This area for notarial seal)

*AM*AM2GMAC*02/24/2012 01:39:51 PM* GMAC01GMACA00000000000003529244* PACHEST*
7302780838 PACHEST_MORT_ASSIGN_ASSN **AM2GMAC*



11164277

B-8375 P-980

PLEASE RECORD AND RETURN TO
RETURN TO First American Title Insurance Company
472 California Road
Quakertown, PA 18951

RECORDER OF DEEDS

RFC

loan # 94005463

chester

9455554

Loan No: 94005463
Borrower: BERTHA HAMILTON

Data ID: 180

Tax Parcel Identification Number: 16-8-1.4

Return to:
AEGIS MORTGAGE CORPORATION
ATTENTION: POST CLOSING
3250 BRIARPARK #400
HOUSTON, TX 77042

[Space Above This Line For Recording Data]

## MORTGAGE

MIN: 100014700940054635

THIS MORTGAGE is made this 9th day of June, 2004, between the Mortgagor, BERTHA HAMILTON AND CHARLES H HUNT

(herein "Borrower"), and
AEGIS FUNDING CORP DBA AEGIS HOME EQUITY, A CORPORATION, organized and existing under the laws of the State of OKLAHOMA, whose address is 1855 W BASELINE RD #200 MESA, AZ 85202

(herein "Lender").
WHEREAS, this Security Instrument is given to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"). MERS is a separate corporation that is acting solely as nominee for Lender (as hereinabove defined) and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

WHEREAS, Borrower is indebted to Lender in the principal sum of FIFTY THOUSAND and NO/100-----Dollars (U.S. $ 50,000.00), which indebtedness is evidenced by Borrower's note dated 9th day of June, 2004 and extensions and renewals thereof (herein "Note"), providing for monthly installments of principal and interest, with the balance of indebtedness, if not sooner paid, due and payable on June 14, 2029.

TO SECURE to Lender the repayment of the indebtedness evidenced by the Note, with interest thereon; the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Mortgage; and the performance of the covenants and agreements of Borrower herein contained, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following described property located in the City of COATESVILLE, CHESTER County, State of Pennsylvania:

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF

**PENNSYLVANIA** · SECOND MORTGAGE · 1/80 · FNMA/FHLMC UNIFORM INSTRUMENT
Form 3839    *(Page 1 of 7 Pages)*

This Document Recorded
06/23/2004
12:50PM
Doc Code: MTG Chester County, Recorder of Deeds Office

Doc Id: 10427911
Receipt #: 175550
Rec Fee: 62.50

FIRST AMERICAN TITLE

06/23/2004 12:50PM

10427911
Page 1 of 8
B-8198 P-1397

ALTA Plain Language Commitment

Order No.: 917671KP (801 Charles
St./Hamilton )
Page Number: 11

Order No: 917671KP (801 Charles
St./Hamilton)

**EXHIBIT 'A'**

All that certain tract of land situate in the City of Coatesville, County of Chester, and Commonwealth of Pennsylvania consisting of Lot Number 4 on a Plan of Lots prepared for Michael, Ann and John Illes and dated 1/23/1974.

Beginning at a point in the North curb line of Charles Street and the Southwest corner of a right way of the Octorara Water Company, thence extending along the North curb line of Charles Street South 71 degrees 13 minutes West 60 feet to a point; thence leaving said curb line North 18 degrees 47 minutes West 141.03 feet to a point in the dividing line of the City of Coatesville and Valley Township (also being the southerly right of way line for the Penn Central Railroad); thence along said dividing line North 71 degrees 17 minutes East 60 feet to a point, also being the Northwest corner of a right of way of the Octorara Water Company; thence leaving the said dividing line and extending along the right of way of the Octorara Water Company South 18 degrees 47 minutes East 140.44 feet to a point in the North curb line of Charles Street and being the point and place of beginning.

BEING PARCEL NO. ~~16-08-0001.040.~~



SC. 16-8-1·4

10427911
Page 3 of 8
04/15/2004 12 SOP
B-6198 P-1397
FIRST AMERICAN TITLE

First American Title Insurance Company

Loan No: 94005463                                                    Data ID: 180

which has the address of 801 CHARLES ST,                          COATESVILLE,
                                              [Street]                    [City]
Pennsylvania        19320                        (herein "Property Address");
                    [Zip Code]

    TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents, all of which shall be deemed to be and remain a part of the property covered by this Mortgage; and all of the foregoing, together with said property (or the leasehold estate if this Mortgage is on a leasehold) are hereinafter referred to as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

    Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property, and that the Property is unencumbered, except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

    UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

    1. Payment of Principal and Interest. Borrower shall promptly pay when due the principal and interest indebtedness evidenced by the Note and late charges as provided in the Note.

    2. Funds for Taxes and Insurance. Subject to applicable law or a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Mortgage and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional lender.

    If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Mortgage that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Mortgage.

Form 3839    1/80    (Page 2 of 7 Pages)

FIRST AMERICAN TITLE          06/25/2004 12:60P          10427911
Page 1 of 5
B-6198 P-1397

Loan No: 94005463                                                      Data ID: 180

If the amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Mortgage, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 17 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Mortgage.

3. Application of Payments. Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, then to interest payable on the Note, and then to the principal of the Note.

4. Prior Mortgages and Deeds of Trust; Charges; Liens. Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Mortgage, and leasehold payments or ground rents, if any.

5. Hazard Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and such other hazards as Lender may require and in such amounts and for such periods as Lender may require.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Mortgage.

6. Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments. Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Mortgage is on a leasehold. If this Mortgage is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

7. Protection of Lender's Security. If Borrower fails to perform the covenants and agreements contained in this Mortgage, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is

Form 3839    1/80    (Page 3 of 7 Pages)



FIRST AMERICAN TITLE                                    10427911
                                                        Page 4 of 8
                                    08/23/2004 12:00    B-6198 P-1397

Loan No: 94005463                                                          Data ID: 180

necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Mortgage, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Mortgage. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

8. **Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

9. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.

10. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Mortgage granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Mortgage by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

11. **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Mortgage, but does not execute the Note, (a) is co-signing this Mortgage only to mortgage, grant and convey that Borrower's interest in the Property to Lender under the terms of this Mortgage, (b) is not personally liable on the Note or under this Mortgage, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Mortgage or the Note without that Borrower's consent and without releasing that Borrower or modifying this Mortgage as to that Borrower's interest in the Property.

12. **Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Mortgage shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Mortgage shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

13. **Governing Law; Severability.** The state and local laws applicable to this Mortgage shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of federal law to this Mortgage. In the event that any provision or clause of this Mortgage or the Note conflicts with applicable law, such conflict shall not affect other provisions of

Form 3839    1/80    (Page 4 of 7 Pages)



FIRST AMERICAN TITLE                                    10427911
                                                        Page 4 of 5
                              04/21/2004 12:60p         B-8198 P-1397

Loan No: 94005463                                                    Data ID: 180

this Mortgage or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Mortgage and the Note are declared to be severable. As used herein, "costs," "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

14. Borrower's Copy. Borrower shall be furnished a conformed copy of the Note and of this Mortgage at the time of execution or after recordation hereof.

15. Rehabilitation Loan Agreement. Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

16. Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Mortgage. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Mortgage.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Mortgage. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Mortgage without further notice or demand on Borrower.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. Acceleration; Remedies. Upon Borrower's breach of any covenant or agreement of Borrower in this Mortgage, including the covenants to pay when due any sums secured by this Mortgage, Lender prior to acceleration shall give notice to Borrower as provided by applicable law specifying, among other things: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 30 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Mortgage, foreclosure by judicial proceeding, and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the nonexistence of a default or any other defense of Borrower to acceleration and foreclosure. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option, may declare all of the sums secured by this Mortgage to be immediately due and payable without further demand and may foreclose this Mortgage by judicial proceeding. Lender shall be entitled to collect in such proceeding all expenses of foreclosure, including, but not limited to, reasonable attorneys' fees, and costs of documentary evidence, abstracts and title reports.

18. Borrower's Right to Reinstate. Notwithstanding Lender's acceleration of the sums secured by this Mortgage due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Mortgage discontinued at any time prior to entry of a judgement enforcing this Mortgage if: (a) Borrower pays Lender all sums which would be then due under this Mortgage and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Mortgage; (c) Borrower pays all reasonable expenses incurred by Lender in enforcing the covenants and agreements of Borrower contained in this Mortgage, and in enforcing Lender's remedies as provided in paragraph 17 hereof, including, but not limited to, reasonable attorneys' fees; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Mortgage, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Mortgage shall continue unimpaired. Upon such payment and cure by Borrower, this Mortgage and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

Form 3839    1/80    (Page 5 of 7 Pages)



FIRST AMERICAN TITLE                    10427011
04/23/2004 12 top                        Page # of #
                                         B-6198 P-1397

Loan No: 94005463                                                Data ID: 180

19. **Assignment of Rents; Appointment of Receiver.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 17 hereof or abandonment of the Property, Lender, in person, by agent or by judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Mortgage. Lender and the receiver shall be liable to account only for those rents actually received.

20. **Release.** Upon payment of all sums secured by this Mortgage, Lender shall discharge this Mortgage without charge to Borrower. Borrower shall pay all costs of recordation, if any.

21. **Interest Rate After Judgment.** Borrower agrees that the interest rate payable after a judgment is entered on the Note or in an action of mortgage foreclosure shall be the rate stated in the Note.

### REQUEST FOR NOTICE OF DEFAULT
### AND FORECLOSURE UNDER SUPERIOR
### MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Mortgage to give Notice to Lender, at Lender's address set forth on page one of this Mortgage, of any default under the superior encumbrance and of any sale or other foreclosure action.

IN WITNESS WHEREOF, Borrower has executed this Mortgage.

................ *Bertha Hamilton* ................(Seal)
BERTHA HAMILTON —Borrower

................ *Charles H Hunt* ................(Seal)
CHARLES H HUNT —Borrower

Form 3839   1/80   (Page 6 of 7 Pages)

10427911
Page 7 of 8
FIRST AMERICAN TITLE        06/19/2004 12:60P    B-8198 P-1397

Loan No: 94005463                                                    Data ID: 180

COMMONWEALTH OF PENNSYLVANIA          §
COUNTY OF CHESTER                      §
On this the 9 day of AAA June, 2004, before me, Erin M Toody, the
undersigned officer, personally appeared
BERTHA HAMILTON AND CHARLES H HUNT
known to me (or satisfactorily proven) to be the persons whose names are subscribed to the within
instrument and acknowledged that they executed the same for the purposes therein contained.

In witness whereof I hereunto set my hand and official seal.

(Seal)
Notarial Seal
Erin M. Toocey, Notary Public
Richland Twp., Bucks County
My Commission Expires Apr. 17, 2006
Member, Pennsylvania Association Of Notaries

_____ Notary Public
_____
                        (Printed Name)

My commission expires: _____

I certify that the precise residence and address of the within-named Lender is: AEGIS FUNDING
CORP DBA AEGIS HOME EQUITY, 1855 W BASELINE RD #200          MESA, AZ
85202

Signature: _____
           (Agent on behalf of Lender)

U21237003-01GM00
AEGIS MORTGAGE
LOAN# 94005463
US Recordation

Form 3839    1/80    (Page 7 of 7 Pages)

10427911
FIRST AMERICAN TITLE                      08/13/2004 12:50M    B-6198 P-1397

# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: BERTHA HAMILTON,<br>Debtor. | CHAPTER 13<br><br>BANKRUPTCY CASE NUMBER<br>12-19762 ELF |

### CERTIFICATE OF SERVICE

I, _Erin Esposito_ , hereby certify, that I served a true and correct copy of the foregoing Proof of Claim, on the following person(s), via electronic filing and/or first class mail, on October _19_ , 2012:

Janis M. Smith, Esquire
428 West First Avenue
Suite C
Parkesburg, PA 19365
Via ecf: jamissmith@comcast.net

William C. Miller, Trustee
Chapter 13 Trustee
111 South Independence Mall
Suite 583
Philadelphia, PA 19106
Via ecf

U.S. Trustee
Office of the U.S. Trustee
833 Chestnut Street
Suite 500
Philadelphia, PA 19107
Via ecf

Bertha Hamilton
801 Charles Street
Coatesville, PA 19320
Via first class mail

Date: _10/19/12_

By: _____

**Partners for Pmt Relief, DIII**                          **Payoff Statement**
3748 West Chester Pike Ste.103
Newtown Square, PA 19073                    Date Printed
888-879-4997
                                            10/19/12

Send to                                     Reference

Bertha Hamilton                             Loan number: 120101007-RC
801 CHARLES ST                              Collateral: 801 CHARLES ST
Coatesville, PA 19320

| Below you will find the payoff figures on the above referenced account. Please contact us immediately if you have any questions. Partners for Payment Relief DE III, LLC - 888.879.4997(p)  888.700.4988(f) |
|---|

| Last Pmt | Amount | Interest | Principal | Escrow | Late/Svc | Ref |
|---|---|---|---|---|---|---|
| 06/09/04 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| Balances | | | 46240.05 | 0.00 | 0.00 | |

| | | |
|---|---|---|
| Payoff amount as of 03/14/10 | 46240.05 | |
| Interest cycles (31.0) | 15230.32 | ⟶ |
| Periodic late(27.73)/svc(0.00) | 831.90 | |
| Total through 10/14/12 | 62302.27 | |

| | |
|---|---|
| Daily interest accrual is: | 16.15   (16.1523462) |

| Payoff on: | Payoff amount: | Payoff on: | Payoff amount: |
|---|---|---|---|
| 10/19/12 | 62383.03 | 11/01/12 | 62620.74 |
| 10/20/12 | 62399.18 | 11/02/12 | 62636.89 |
| 10/21/12 | 62415.34 | 11/03/12 | 62653.05 |
| 10/22/12 | 62431.49 | 11/04/12 | 62669.20 |
| 10/23/12 | 62447.64 | 11/05/12 | 62685.35 |
| 10/24/12 | 62463.79 | 11/06/12 | 62701.50 |
| 10/25/12 | 62479.95 | 11/07/12 | 62717.66 |
| 10/26/12 | 62496.10 | 11/08/12 | 62733.81 |
| 10/27/12 | 62512.25 | 11/09/12 | 62749.96 |
| 10/28/12 | 62528.40 | 11/10/12 | 62766.11 |
| 10/29/12 | 62544.56 | 11/11/12 | 62782.27 |
| 10/30/12 | 62588.44 | 11/12/12 | 62798.42 |
| 10/31/12 | 62604.59 | 11/13/12 | 62814.57 |

**Partners for Pmt Relief, DIII**                                      **Invoice**
3748 West Chester Pike Ste.103
Newtown Square, PA 19073
888-879-4997 paymentrelief4@gmail.com

| Dates | |
|---|---|
| Invoice date: 10/19/12 | |
| Due date  : 04/14/10 | |

Send to                                              Reference

Bertha Hamilton                     Loan number: 120101007-RC
801 CHARLES ST                      Collateral: 801 CHARLES ST
Coatesville, PA 19320               Rate:  12.750

Below you will find your invoice and a coupon for the coming payment including any
past due balance. We understand this payment may be difficult for you to pay in full.
Please contact us when you receive this notice so we can discuss your options.
Partners for Payment Relief DE III, LLC is a private mortgage investment company
dedicated to helping homeowners "one at a time." Call immediately: 888.879.4997.

| | | | |
|---|---|---|---|
| Payments to bring current (31) | Regular : | $ | 17190.43 |
| | Late/Svc : | + | 831.90 |
| Last payment 06/09/04 was due 03/14/10 | Accrued : | - | 0.00 |
| | Total late : | $ | 18022.33 |
| Next payment due 11/14/12 | Payment : | $ | 554.53 |
| Balance (est) : $ 46240.05 | **Invoice :** | $ | **18576.86** |
| After 11/29/12 | Late fee: | | 27.73 |
| Grace days:  15 | Invoice : | $ | 18604.59 |

Financial counseling is available at www.HUD.gov. Choose Resources, then HUD Approved Housing Counseling Agencies.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
Return this portion with your payment.

From                                                 Reference

                                                     120101007-RC, 801 CHARLES ST
Bertha Hamilton
801 CHARLES ST                                       Payment
Coatesville, PA 19320
                                                     Next payment due 11/14/12
                                                     Total late :  $          18022.33
                                                     Payment :    $            554.53

Return to

**Partners for Pmt Relief, DIII**                    **Invoice :**  $         **18576.86**
3748 West Chester Pike Ste.103
Newtown Square, PA 19073                              After 11/29/12              27.73
                                                     Invoice  :  $          18604.59

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: BERTHA HAMILTON, Debtor. | CHAPTER 13 |
| | BANKRUPTCY CASE NUMBER 12-19762 ELF |

## CERTIFICATE OF SERVICE

I, _Erin Esposito_ , hereby certify, that I served a true and correct copy of the foregoing Proof of Claim, on the following person(s), via electronic filing and/or first class mail, on October _19_ , 2012:

Janis M. Smith, Esquire
428 West First Avenue
Suite C
Parkesburg, PA 19365
Via ecf: jamissmith@comcast.net

William C. Miller, Trustee
Chapter 13 Trustee
111 South Independence Mall
Suite 583
Philadelphia, PA 19106
Via ecf

U.S. Trustee
Office of the U.S. Trustee
833 Chestnut Street
Suite 500
Philadelphia, PA 19107
Via ecf

Bertha Hamilton
801 Charles Street
Coatesville, PA 19320
Via first class mail

Date: _10/19/12_

By: _____

File No. L-0865

## Petersheim & Longenecker
### APPRAISAL, CO.

## APPRAISAL OF



REAL ESTATE

## LOCATED AT:

801 CHARLES STREET
COATESVILLE, PA 19320

## FOR:

CHARLES H. HUNT & BERTHA HAMILTON
801 CHARLES STREET
COATESVILLE, PA 19320

## BORROWER:

CHARLES H. HUNT & BERTHA HAMILTON

## AS OF:

OCTOBER 5, 2012

## BY:

ORPHA ROSE LONGENECKER- #RL139649
STATE CERTIFIED REAL ESTATE APPRAISER

390 OLD LIMESTONE ROAD, PARKESBURG, PA 19365  717-413-9297



File No. L-0865

## Petersheim & Longenecker
### APPRAISAL, CO.

N/A
CHARLES H. HUNT & BERTHA HAMILTON
801 CHARLES STREET
COATESVILLE, PA 19320

File Number:  L-0865

In accordance with your request, I have appraised the real property at:

801 CHARLES STREET
COATESVILLE, PA 19320

The purpose of this appraisal is to develop an opinion of the market value of the subject property, as improved. The property rights appraised are the fee simple interest in the site and improvements.

In my opinion, the market value of the property as of  OCTOBER 5, 2012                    is:

$117,000
ONE HUNDRED SEVENTEEN THOUSAND  DOLLARS

The attached report contains the description, analysis and supportive data for the conclusions, final opinion of value, descriptive photographs, limiting conditions and appropriate certifications.

*Orpha R P Longenecker*

ORPHA ROSE LONGENECKER- #RL139649
STATE CERTIFIED REAL ESTATE APPRAISER

# Uniform Residential Appraisal Report

File No. L-0865

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

| Property Address 801 CHARLES STREET | City COATESVILLE | State PA | Zip Code 19320 |
|---|---|---|---|

Borrower CHARLES H. HUNT & BERTHA HAMILTON    Owner of Public Record CHARLESHUNT&BERTHA HAMILTON    County CHESTER

Legal Description DEED REF # 6158/1946    COATESVILLE CITY    SMSA:42:011-6680

Assessor's Parcel # 16-08-0001.0400    Tax Year 2012    R.E. Taxes $ 3,947 ESTIMATE

Neighborhood Name COATESVILLE CITY    Map Reference ADC#3579-G-4    Census Tract 3054.001

Occupant [X] Owner [ ] Tenant [ ] Vacant    Special Assessments $ N/A    [ ] PUD    HOA $ N/A    [ ] per year [ ] per month

Property Rights Appraised [X] Fee Simple [ ] Leasehold [ ] Other (describe)

Assignment Type [ ] Purchase Transaction [ ] Refinance Transaction [X] Other (describe) MARKET VALUE

Lender/Client CHARLES H. HUNT & BERTHA HAMILTON    Address 801 CHARLES STREET, COATESVILLE, PA 19320

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal? [ ] Yes [X] No

Report data source(s) used, offering price(s), and date(s). DEED, MLS

I [ ] did [ ] did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.

Contract Price $ N/A    Date of Contract N/A    Is the property seller the owner of public record? [ ] Yes [ ] No    Data Source(s)

Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? [ ] Yes [ ] No
If Yes, report the total dollar amount and describe the items to be paid.

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | One-Unit Housing Trends | | | One-Unit Housing | | Present Land Use % | |
|---|---|---|---|---|---|---|---|---|
| Location [ ] Urban [X] Suburban [ ] Rural | | Property Values [ ] Increasing [X] Stable [ ] Declining | | | PRICE $(000) | AGE (yrs) | One-Unit | 70 % |
| Built-Up [X] Over 75% [ ] 25-75% [ ] Under 25% | | Demand/Supply [ ] Shortage [X] In Balance [ ] Over Supply | | | Low 40 | NEW | 2-4 Unit | 5 % |
| Growth [ ] Rapid [X] Stable [ ] Slow | | Marketing Time [ ] Under 3 mths [X] 3-6 mths [ ] Over 6 mths | | | | | Multi-Family | 3 % |
| Neighborhood Boundaries  SUBJECT NEIGHBORHOOD IS THE COATESVILLE AREA SCHOOL DISTRICT. | | | | | 200+ High 150 Pred. | 100+ 25 | Commercial | 10 % |
| | | | | | | | Other OPEN | 12 % |

Neighborhood Description  SUBJECT IS LOCATED NORTH OF MADISON STREET, SOUTH OF LINCOLN HIGHWAY, EAST OF HOPE AVENUE AND WEST OF RIDGE AVENUE.  CONVENIENTLY LOCATED NEAR ALL NECESSARY AMENITIES.  NO UNFAVORABLE MARKETING CONDITIONS WERE NOTED AT TIME OF INSPECTION.

Market Conditions (including support for the above conclusions)  See Attached Addendum

| Dimensions SEE ATTACHED LEGAL | Area 0.19+/- ACRES | Shape RECTANGULAR | View AVG FOR AREA |
|---|---|---|---|

Specific Zoning Classification RN1    Zoning Description RESIDENTIAL

Zoning Compliance [X] Legal [ ] Legal Nonconforming (Grandfathered Use) [ ] No Zoning [ ] Illegal (describe)

Is the highest and best use of the subject property as improved (or as proposed per plans and specifications) the present use? [X] Yes [ ] No    If No, describe.

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements—Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | [X] | | Water | [X] | | Street PAVED | [X] | |
| Gas | [X] NONE | | Sanitary Sewer | [X] | | Alley NONE | | |

FEMA Special Flood Hazard Area [ ] Yes [X] No    FEMA Flood Zone X    FEMA Map # 42029C0190F    FEMA Map Date 09/29/2006

Are the utilities and off-site improvements typical for the market area? [X] Yes [ ] No    If No, describe.

Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? [ ] Yes [X] No    If Yes, describe.

| GENERAL DESCRIPTION | | FOUNDATION | | EXTERIOR DESCRIPTION materials/condition | | INTERIOR materials/condition | |
|---|---|---|---|---|---|---|---|
| Units [X] One [ ] One with Accessory Unit | | [ ] Concrete Slab [ ] Crawl Space | | Foundation Walls BLOCK/AVG | | Floors V,WD/AVG | |
| # of Stories ONE | | [X] Full Basement [ ] Partial Basement | | Exterior Walls BRICK/AVG | | Walls DRYWALL/AVG | |
| Type [X] Det. [ ] Att. [ ] S-Det./End Unit | | Basement Area 1120 sq.ft. | | Roof Surface SHINGLE/AVG | | Trim/Finish PAINTED/AVG | |
| [X] Existing [ ] Proposed [ ] Under Const. | | Basement Finish APPROX. 50 % | | Gutters & Downspouts ALUMINUM/AVG | | Bath Floor VINYL/AVG | |
| Design (Style) RANCH | | [ ] Outside Entry/Exit [ ] Sump Pump | | Window Type DOUBLE HNG/AVG | | Bath Wainscot TILE/AVG | |
| Year Built 1975 | | Evidence of [ ] Infestation | | Storm Sash/Insulated INSULATED/AVG | | Car Storage [ ] None | |
| Effective Age (Yrs) 8 | | [ ] Dampness [ ] Settlement | | Screens SOME/AVG | | [X] Driveway # of Cars TWO | |
| Attic [X] None | | Heating [X] FWA [ ] HWBB [ ] Radiant | | Amenities [ ] WoodStove(s) # | | Driveway Surface PAVED | |
| [ ] Drop Stair [ ] Stairs | | [ ] Other Fuel OIL | | [X] Fireplace(s) # 1 [ ] Fence | | [X] Garage # of Cars ONE | |
| [ ] Floor [ ] Scuttle | | Cooling [ ] Central Air Conditioning | | [X] Patio/Deck DECK [X] Porch SUN | | [ ] Carport # of Cars | |
| [ ] Finished [ ] Heated | | [ ] Individual [X] Other NONE | | [ ] Pool [ ] Other | | [ ] Att. [X] Det. [ ] Built-In | |
| Appliances [P] Refrigerator [X] Range/Oven | | [X] Dishwasher [ ] Disposal [P] Microwave | | [ ] Washer/Dryer [ ] Other (describe) | | | |

Finished area above grade contains:    5 Rooms    3 Bedrooms    1 Bath(s)    1,120 Square Feet of Gross Living Area Above Grade

Additional features (special energy efficient items, etc.).  SUBJECT IS HEATED BY AN OIL BURNING FURNACE, FORCED AIR.  NO CENTRAL AIR.

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.).    SUBJECT DWELLING IS IN AVERAGE CONDITION.  NOTED WAS WATER SPOTS ON LIVING ROOM ROOF.  THERE APPEARS TO BE A LEAK IN THE ROOF - HOWEVER THE APPRAISER IS NOT AN INSPECTOR AND THEREFORE MAKES NO RECOMMENDATION TO THE CONDITION OF THE ROOF ONLY NOTING THE WATER SPOTS ON LIVING ROOM CEILING.  SUBJECT HAS A PARTIALLY FINISHED BASEMENT WHICH INCLUDES FAMILY AREA, BAR AND A HALF BATH.  SUBJECT HAS ONE CAR DETACHED GARAGE.

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? [ ] Yes [X] No    If Yes, describe.

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? [X] Yes [ ] No    If No, describe.

## Uniform Residential Appraisal Report

File No. L-0865

| There are | 3 | comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 100,000 | | to $ 155,000 |
|---|---|---|---|---|
| There are | 6 | comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 85,000 | | to $ 140,000 |

| FEATURE | SUBJECT | COMPARABLE SALE NO. 1 | | COMPARABLE SALE NO. 2 | | COMPARABLE SALE NO. 3 | |
|---|---|---|---|---|---|---|---|
| Address | 801 CHARLES STREET COATESVILLE | 919 HIGH STREET COATESVILLE, PA 19320 | | 301 RAINBOW ROAD COATESVILLE, PA 19320 | | 840 WALNUT STREET COATESVILLE, PA 19320 | |
| Proximity to Subject | | 0.47 miles NW | | 0.50 miles WNW | | 1.80 miles ENE | |
| Sale Price | $ N/A | $ 92,000 | | $ 93,000 | | $ 125,000 | |
| Sale Price/Gross Liv. Area | $ 0.00 sq. ft. | $ 91.27 sq. ft. | | $ 71.76 sq. ft. | | $ 105.40 sq. ft. | |
| Data Source(s) | | MLS#5954100 | | MLS#6006785 | | MLS#6038871 | |
| Verification Source(s) | | DAYS ON MARKET (DOM)=169 | | DAYS ON MARKET (DOM)=23 | | DAYS ON MARKET (DOM)=26 | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-)$ Adjustment | DESCRIPTION | +(-)$ Adjustment | DESCRIPTION | +(-)$ Adjustment |
| Sale or Financing Concessions | | FHA $5,520 | -2,520 | FHA $10,000 | -7,000 | CONVENTIONAL NONE DISCLOSED | |
| Date of Sale/Time | N/A | 04/18/2012 | | 04/26/2012 | | 07/13/2012 | |
| Location | SUBURBAN | SUBURBAN | | SUBURBAN | | SUBURBAN | |
| Leasehold/Fee Simple | FEE SIMPLE | FEE SIMPLE | | FEE SIMPLE | | FEE SIMPLE | |
| Site | 0.19+/- ACRES | 0.15+/- ACRES | | 0.30+/- ACRES | | 0.23+/- ACRES | |
| View | AVG FOR AREA | AVERAGE | | AVERAGE | | AVERAGE | |
| Design (Style) | ONE STORY | ONE STORY | | ONE STORY | | ONE STORY | |
| Quality of Construction | BRICK | VINYL | | VINYL | | BRICK | |
| Actual Age | 37+/- YEARS | 55+/- YEARS | | 13+/- YEARS | | 54+/- YEARS | |
| Condition | AVERAGE | AVERAGE | | AVG/FAIR | +10,500 | AVERAGE | |
| Above Grade | Total 5 Bdrms 3 Baths 1 | Total 5 Bdrms 3 Baths 1 | | Total 6 Bdrms 3 Baths 2 | -3,000 | Total 5 Bdrms 3 Baths 1 | |
| Room Count | | | | | | | |
| Gross Living Area 20.00 | 1,120 sq. ft. | 1,008 sq. ft. | 2,200 | 1,296 sq. ft. | -3,500 | 1,186 sq. ft. | 0 |
| Basement & Finished Rooms Below Grade | FULL/1120 SQ FT. FAMILY, 1/2 BATH | FULL UNFINISHED | +5,500 | FULL UNFINISHED | +5,500 | FULL FAM,BDRM,1/2 BT | -1,500 |
| Functional Utility | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Heating/Cooling | OIL,FA, NO C/AIR | OIL,FA,C/AIR | -3,000 | GAS,FA,C/AIR | -3,000 | OIL,HWBB,NOC/A | |
| Energy Efficient Items | INSUL GLASS | INSUL GLASS | | INSUL GLASS | | INSUL GLASS | |
| Garage/Carport | ONE CAR GARAGE | NONE | +3,000 | NONE | +3,000 | NONE | +3,000 |
| Porch/Patio/Deck | SUNRM, DECK | DECK, PATIO | | NONE | +1,500 | PORCH, PATIO | |
| FIREPLACE | 1 FIREPLACE | NONE | +2,000 | NONE | +2,000 | NONE | +2,000 |
| FENCING | NONE | NONE | | NONE | | NONE | |
| OUTBUILDINGS | NONE | NONE | | NONE | | NONE | |
| Net Adjustment (Total) | | X + - $ | 7,180 | X + - $ | 6,000 | X + - $ | 3,500 |
| Adjusted Sale Price of Comparables | | Net Adj. 7.8% Gross Adj. 19.8% $ | 99,180 | Net Adj. 6.5% Gross Adj. 41.9% $ | 99,000 | Net Adj. 2.8% Gross Adj. 5.2% $ | 128,500 |

I [X] did [ ] did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research [ ] did [X] did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data source(s) DEED

My research [ ] did [X] did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data source(s) TAX RECORDS

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE NO. 1 | COMPARABLE SALE NO. 2 | COMPARABLE SALE NO. 3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | 04/23/2004 | 38-02Q-0103 | 38-05C-0001 | 07/17/1996 |
| Price of Prior Sale/Transfer | $1 | 38-02Q-0103 | 38-05C-0001 | $88,000 |
| Data Source(s) | DEED | TAX RECORDS | TAX RECORDS | TAX RECORDS |
| Effective Date of Data Source(s) | 10/09/2012 | 10/09/2012 | 10/09/2012 | 10/09/2012 |

Analysis of prior sale or transfer history of the subject property and comparable sales    PRIOR SALES AND TRANSFERS AS SHOWN ABOVE.

Summary of Sales Comparison Approach    ALL COMPS WERE SOLD AND SETTLED IN THE SUBJECT MARKET AREA.  COMP #1 AND #2 WERE ADJUSTED FOR HAVING SELLERS ASSISTANCE.  COMP #2 WAS ADJUSTED FOR BEING IN INFERIOR CONDITION.  ALL OTHER ADJUSTMENTS WERE MADE AS KNOWN.  ALL COMPS WERE GIVEN SOME CONSIDERATION OF VALUE.  ALL COMPS, LIKE THE SUBJECT, HAVE ONE STORY DWELLINGS AND ARE LOCATED IN THE COATESVILLE AREA SCHOOL DISTRICT.  MORE WEIGHT WAS GIVEN TO COMP #3 BEING MOST LIKE THE SUBJECT IN CONDITION, HAVING A FINISHED BASEMENT, BEING THE MOST RECENT SALE PRIOR TO THE DATE OF THIS APPRAISAL REPORT, HAVING NO CENTRAL AIR CONDITIONING, HAVING THE SAME ROOM AND BATH COUNT, BEING MOST LIKE THE SUBJECT IN GROSS LIVING SPACE AND BEING MOST LIKE THE SUBJECT IN APPEAL.  NO VALUE WAS GIVEN TO ANY PERSONAL PROPERTY.

Indicated Value by Sales Comparison Approach $ 117,000    WEIGHTS WERE GIVEN AS FOLLOWS:

Indicated Value by: Sales Comparison Approach $117,000    Cost Approach (if developed) $ 0    Income Approach (if developed) $ 0
DUE TO THE SALES COMPARISON APPROACH BEING USED BY TYPICAL BUYERS & SELLERS IN REACHING A DECISION THIS METHOD REFLECTS THE BEST INDICATION OF VALUE. FEW HOMES OF THIS TYPE ARE RENTED WHICH RESULTS IN LIMITED RENTAL DATA. THEREFORE THE INCOME APPROACH WAS NOT USED. DUE TO THE AGE OF THE SUBJECT, THE COST APPROACH IS NOT A RELIABLE INDICATION OF VALUE.
This appraisal is made [X] "as is", [ ] subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, [ ] subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or [ ] subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair:

Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is $ 117,000
as of   OCTOBER 5, 2012                 , which is the date of inspection and the effective date of this appraisal.

Petersheim & Longenecker Appraisal Co.

## Uniform Residential Appraisal Report

File No. L-0865

ADDITIONAL COMMENTS

### COST APPROACH TO VALUE (not required by Fannie Mae)

Provide adequate information for the lender/client to replicate the below cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)

| ESTIMATED ☐ REPRODUCTION OR ☐ REPLACEMENT COST NEW | OPINION OF SITE VALUE .......................................... = $ | 0 |
|---|---|---|
| Source of cost data | Dwelling 1,120 Sq. Ft. @ $ ................. = $ | 0 |
| Quality rating from cost service Effective date of cost data | BSMT: 1120 Sq. Ft. @ $ ................. = $ | 0 |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | Garage/Carport Sq. Ft. @ $ ................. = $ | |
| DUE TO THE AGE OF THE SUBJECT PROPERTY, THE COST APPROACH IS | Total Estimate of Cost-New ................. = $ | 0 |
| NOT A RELIABLE INDICATION OF VALUE. | Less 50 Physical Functional External | |
| | Depreciation = $ ( | 0) |
| | Depreciated Cost of Improvements ......................... = $ | 0 |
| | "As-is" Value of Site Improvements ......................... = $ | |
| Estimated Remaining Economic Life (HUD and VA only) 42 Years | INDICATED VALUE BY COST APPROACH ....................... = $ | 0 |

### INCOME APPROACH TO VALUE (not required by Fannie Mae)

Estimated Monthly Market Rent $          N/A  X Gross Rent Multiplier          N/A  = $          0  Indicated Value by Income Approach

Summary of Income Approach (including support for market rent and GRM)

### PROJECT INFORMATION FOR PUDs (if applicable)

Is the developer/builder in control of the Homeowners' Association (HOA)? ☐ Yes ☐ No  Unit type(s) ☐ Detached ☐ Attached

Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.

Legal name of project

| Total number of phases | Total number of units | Total number of units sold |
|---|---|---|
| Total number of units rented | Total number of units for sale | Data source(s) |

Was the project created by the conversion of an existing building(s) into a PUD? ☐ Yes ☐ No  If Yes, date of conversion.

Does the project contain any multi-dwelling units? ☐ Yes ☐ No  Data source(s)

Are the units, common elements, and recreation facilities complete? ☐ Yes ☐ No  If No, describe the status of completion.

Are the common elements leased to or by the Homeowners' Association? ☐ Yes ☐ No  If Yes, describe the rental terms and options.

Describe common elements and recreational facilities.

PETERSHEIM & LONGENECKER APPRAISAL, CO

## Uniform Residential Appraisal Report

File No. L-0865

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

SCOPE OF WORK: The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

INTENDED USE: The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

INTENDED USER: The intended user of this appraisal report is the lender/client.

DEFINITION OF MARKET VALUE: The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS: The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1.   The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2.   The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3.   The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4.   The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5.   The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing this appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6.   The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

PETERSHEIM & LONGENECKER APPRAISAL, CO

## Uniform Residential Appraisal Report

File No. L-0865

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

PETERSHEIM & LONGENECKER APPRAISAL, CO

## Uniform Residential Appraisal Report

File No. L-0865

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

**SUPERVISORY APPRAISER'S CERTIFICATION:** The Supervisory Appraiser certifies and agrees that:

1.   I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2.   I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3.   The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4.   This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5.   If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if  a paper version of this appraisal report were delivered containing my original hand written signature.

**APPRAISER**

Signature  *Orpha R Plongenecker*
Name ORPHA ROSE LONGENECKER/#RL139649
Company Name PETERSHEIM & LONGENECKER APPRAISAL, CO
Company Address 390 OLD LIMESTONE ROAD
PARKESBURG, PA  19365
Telephone Number 717-413-9297
Email Address ORPHA@PETERSHEIMANDLONGENECKER.COM
Date of Signature and Report 10/09/2012
Effective Date of Appraisal OCTOBER 5, 2012
State Certification # RL139649
or State License # RL139649
or Other (describe) RL139649        State # RL139649
State PA
Expiration Date of Certification or License 06/30/2013

ADDRESS OF PROPERTY APPRAISED
801 CHARLES STREET
COATESVILLE, PA  19320

APPRAISED VALUE OF SUBJECT PROPERTY $ 117,000

LENDER/CLIENT
Name N/A
Company Name CHARLES H. HUNT & BERTHA HAMILTON
Company Address 801 CHARLES STREET
COATESVILLE, PA 19320
Email Address

**SUPERVISORY APPRAISER (ONLY IF REQUIRED)**

Signature
Name
Company Name
Company Address
Telephone Number
Email Address
Date of Signature
State Certification #
or State License #
State
Expiration Date of Certification or License

SUBJECT PROPERTY
☐ Did not inspect subject property
☐ Did inspect exterior of subject property from street
    Date of Inspection
☐ Did inspect interior and exterior of subject property
    Date of Inspection

COMPARABLE SALES
☐ Did not inspect exterior of comparable sales from street
☐ Did inspect exterior of comparable sales from street
    Date of Inspection

Petersheim & Longenecker Appraisal Co.

ADDENDUM

File No.: 2-4665

*Neighborhood Market Conditions*
CURRENT MARKET CONDITIONS ARE STABLE WITH FAVORABLE INTEREST RATES. MORTGAGE RATES RANGE FROM 5.5% TO 6.5% FOR A TYPICAL 30 YEAR MORTGAGE AND 3 DISCOUNT POINTS. SMALL SELLER CONCESSIONS ARE COMMON IN THIS AREA. SUPPLY AND DEMAND APPEAR TO BE IN BALANCE IN THIS AREA. MARKETING TIME VARIES GREATLY DEPENDING ON PRICE, CONDITION, SELLER MOTIVATION AND OTHER FACTORS.

| Borrower CHARLES H. HUNT & BERTHA HAMILTON | | | File No. L-0865 |
|---|---|---|---|
| Property Address 801 CHARLES STREET | | | |
| City COATESVILLE | County CHESTER | State PA | Zip Code 19320 |
| Lender CHARLES H. HUNT & BERTHA HAMILTON | | | |

## APPRAISAL AND REPORT IDENTIFICATION

### This Appraisal Report is one of the following types:

[ ] Self Contained  (A written report prepared under Standards Rule 2-2(a), pursuant to the Scope of Work, as disclosed elsewhere in this report.)

[x] Summary  (A written report prepared under Standards Rule 2-2(b), pursuant to the Scope of Work, as disclosed elsewhere in this report.)

[ ] Restricted Use  (A written report prepared under Standards Rule 2-2(c), pursuant to the Scope of Work, as disclosed elsewhere in this report, restricted to the stated intended use by the specified client or intended user.)

### Comments on Standards Rule 2-3

I certify that, to the best of my knowledge and belief:

- The statements of fact contained in this report are true and correct.
- The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and are my personal, impartial, and unbiased professional analyses, opinions and conclusions.
- I have no (or the specified) present or prospective interest in the property that is the subject of this report, and no (or the specified) personal interest with respect to the parties involved.
- I have no bias with respect to the property that is the subject of this report or the parties involved with this assignment.
- My engagement in this assignment was not contingent upon developing or reporting predetermined results.
- My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.
- My analyses, opinions and conclusions were developed and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice.
- I have (or have not) made a personal inspection of the property that is the subject of this report.
- No one provided significant real property appraisal assistance to the person signing this certification. (If there are exceptions, the name of each individual providing significant real property appraisal assistance is stated elsewhere in this report.)

### Comments on Appraisal and Report Identification

Note any USPAP related issues requiring disclosure and any State mandated requirements:

Clarification of Intended Use and Intended User:

The Intended User of this appraisal report is the Lender/Client. The Intended Use is to evaluate the property that is the subject of this appraisal for a mortgage finance transaction, subject to the stated Scope of Work, purpose of the appraisal, reporting requirements of this appraisal report form, and Definition of Market Value. No additional Intended Users are identified by the appraiser.

| APPRAISER: | SUPERVISORY APPRAISER (only if required): |
|---|---|
| Signature: *Orpha R P Longenecker* | Signature: _____ |
| Name: ORPHA ROSE LONGENECKER/ #RL139649 | Name: _____ |
| Date Signed: 10/09/2012 | Date Signed: _____ |
| State Certification #: RL139649 | State Certification #: _____ |
| or State License #: RL139649 | or State License #: _____ |
| State: PA | State: _____ |
| Expiration Date of Certification or License: 06/30/2013 | Expiration Date of Certification or License: _____ |
| | Supervisory Appraiser inspection of Subject Property: |
| Effective Date of Appraisal: OCTOBER 5, 2012 | [ ] Did Not   [ ] Exterior-only from street   [ ] Interior and Exterior |

THE SCOPE OF WORK FOR THIS ASSIGNMENT BEGAN WITH IDENTIFYING THE VALUATION PROBLEM AND THEN TO PROVIDE AN ESTIMATE OF MARKET VALUE FOR THE NAMED CLIENT BELOW USING SOME DEPENDABLE GUIDELINES FOR THE APPRAISER TO CONSIDER TO DEVELOP THE APPROPRIATE SCOPE OF WORK:

(1) CLIENT AND INTENDED USERS AND INTENDED USE OF APPRAISAL
AS REQUIRED BY USPAP, THE APPRAISER IS REQUIRED TO IDENTIFY AT THE TIME OF THE ASSIGNMENT THE CLIENT, THE INTENDED USE AND THE INTENDED USERS OF AN APPRAISAL. IN THIS CASE, THE APPRAISER NAMED IN THIS APPRAISAL REPORT, DID NOT IDENTIFY ANY INTENDED USER OTHER THEN THEMSELVES.  THE CLIENT MAY PROVIDE COPIES OF THIS APPRAISAL REPORT TO OTHERS AS STATED IN CERTIFICATION #21. THE OTHER PARTIES MAY CHOSE TO RELY UPON THIS APPRAISAL REPORT, HOWEVER, THEY SHOULD NOT RELY ON IT TO DISCLOSE CONDITIONS AND DEFECTS OF THE SUBJECT PROPERTY AND IMPROVEMENTS NOT ALREADY DISCUSSED IN THIS APPRAISAL REPORT. THE ONLY INTENDED USE OF THIS APPRAISAL REPORT IS FOR THE CLIENT TO ESTABLISH A CURRENT MARKET VALUE. ANY OTHER USE OR USER OF THIS APPRAISAL IS NOT INTENDED AND THE APPRAISER - CLIENT RELATIONSHIP DOES NOT EXTEND TO ANY UNINTENDED USER. IT SHOULD BE NOTED THAT INSURABLE VALUE OFTEN IS NOT SYNONYMOUS WITH MARKET VALUE. THIS APPRAISAL SHOULD NOT BE USED AS A BASIS FOR INSURING THE PROPERTY. NOTWITHSTANDING, THE INTENDED USER MAY USE THIS APPRAISAL REPORT AND THE CONTENTS HEREIN FOR THE USE FOR ESTABLISHING A CURRENT MARKET VALUE ONLY.

(2) DEFINITION OF VALUE
THE DEFINITION OF VALUE IS CONTAINED ON PAGE 4 OF THIS FORM, AND IS A PREDEFINED DEFINITION FROM FANNIE MAE.

(3) EFFECTIVE DATE OF THE APPRAISAL
THE EFFECTIVE DATE OF THE APPRAISAL, IS NOTED ON PAGE 2 OF THE APPRAISAL REPORT. THIS DATE IS A CURRENT EFFECTIVE DATE, AS DIFFERENTIATED FROM A PROSPECTIVE OR RETROSPECTIVE EFFECTIVE DATE. THE EFFECTIVE DATE OF THE APPRAISAL IS ALSO THE DATE OF INSPECTION OF THE SUBJECT PROPERTY.

(4) SUBJECT OF THE ASSIGNMENT AND ITS RELEVANT CHARACTERISTICS
ON PAGE ONE OF THIS APPRAISAL, THE SUBJECT IS IDENTIFIED BY ITS STREET ADDRESS, TAX PARCEL NUMBER, AND BY DEED REFERENCE. AS NOTED ABOVE, ON THE EFFECTIVE DATE, THE APPRAISER VISITED THE SUBJECT PROPERTY TO MAKE ON SITE OBSERVATIONS. A "COMPLETE VISUAL OBSERVATION", AS STATED IN CERTIFICATION #2 IS DEFINED AS THE FOLLOWING AND INCLUDES ONLY THE FOLLOWING. A VISUAL OBSERVATION OF THE SUBJECT FROM THE GROUND LEVEL WALKING AROUND THE SUBJECTS IMPROVEMENTS AND LOOKING IN EACH OF THE IMPROVEMENTS (HOUSE, GARAGE, & OTHER BUILDINGS ON SITE). THE MEASURING OF THE EXTERIOR OF THE SUBJECT'S HOUSE, GARAGE, AND SIGNIFICANT OUTBUILDINGS (SHOPS, BARNS, & ACCESSORY DWELLING UNITS). A VISUAL OBSERVATION OF THE INTERIOR LAY OUT/FLOOR PLAN OF THE SUBJECT'S HOUSE. ASSESS THE FUNCTIONAL UTILITY OF THE PROPERTY, ADDRESS THE CONFORMITY TO THE NEIGHBORHOOD, AND A VISUAL OBSERVATION OF THE READILY APPARENT CONDITION OF THE PROPERTY. THE "COMPLETE VISUAL OBSERVATION" DOES NOT INCLUDE OBSERVATION OF THE CRAWL SPACE ACCESS, ATTIC, TESTING OF THE MECHANICAL SYSTEMS (INCLUDES BUT NOT LIMITED TO WELL, SEPTIC SYSTEM, FURNACE, WATER HEATER, KITCHEN AND BATHROOM APPLIANCES/FIXTURES, FIREPLACE, ELECTRICAL SYSTEMS, NATURAL/PROPANE GAS SYSTEMS, AND PLUMBING SYSTEMS). THE APPRAISER ONLY REPORTS WHAT IS READILY OBSERVABLE BASED UPON THE VISUAL OBSERVATION. THE APPRAISER IS NOT LIABLE FOR ITEMS THAT ARE CONCEALED AND THOSE ITEMS THAT CAN NOT BE SEEN.

(5) ASSIGNMENT CONDITIONS
THE ASSIGNMENT FROM THE CLIENT CONTAINED NO SPECIAL CONDITIONS, HYPOTHETICAL CONDITIONS, OR EXTRA-ORDINARY ASSUMPTIONS TO CONSIDER IN THE DEVELOPMENT OF THE OPINION OF VALUE. AS NOTED ABOVE, THERE ARE CERTAIN ASSUMPTIONS APPRAISER MUST MAKE ABOUT A PROPERTY WHEN DEVELOPING THE OPINION OF VALUE. THESE INCLUDE THOSE ITEMS INCLUDED IN THE PREPRINTED LIMITING CONDITIONS, AND ITEMS NOTED ABOVE SUCH AS THE STRUCTURAL AND MECHANICAL ELEMENTS OF THE PROPERTY ARE ASSUMED TO BE IN GOOD WORKING ORDER, THAT THERE IS MARKETABLE TITLE TO THE PROPERTY, IT SHOULD BE NOTED THAT THERE ARE A WIDE VARIETY OF DETRIMENTAL CONDITIONS THAT CAN IMPACT PROPERTY VALUES. THESE INCLUDE, BUT ARE NOT LIMITED TO, NON-MARKET MOTIVATIONS, FUTURE TEMPORARY DISRUPTIONS, STIGMAS, CONVICTED CRIMINALS WHO RESIDE IN THE AREA, NEIGHBORHOOD NUISANCES, FUTURE, UNANNOUNCED SURROUNDING DEVELOPMENTS, STRUCTURAL AND ENGINEERING CONDITIONS, CONSTRUCTION CONDITIONS, SOILS AND GEOTECHNICAL ISSUES, ENVIRONMENTAL AND NATURAL CONDITIONS (INCLUDING SINKHOLES). IF THESE ARE CONCERNS TO THE INTENDED USER, PROFESSIONALS IN THESE FIELDS SHOULD BE RETAINED. DISCOVERING SUCH ITEMS THAT ARE NOT READILY VISIBLE TO AN UNTRAINED PROFESSIONAL IN THESE AREAS IS BEYOND THE SCOPE OF WORK FOR THIS APPRAISAL. THE APPRAISER IS NOT QUALIFIED TO PERFORM A HOME INSPECTION TO DISCOVER MECHANICAL OR STRUCTURAL DEFECTS IN THE IMPROVEMENTS. PETERSHEIM & LONGENECKER APPRAISAL, CO. EXPRESSLY RETAINS ALL RIGHT, TITLE, AND INTEREST IN ALL PATENTS, TRADEMARKS, TRADE NAMES, TRADE SECRETS, SOFTWARE, DATA, CONCLUSIONS, OPINIONS, VALUATIONS, OR OTHER INFORMATION INCLUDED IN, ARISING OUT OF, OR IN ANY WAY RELATED TO THIS APPRAISAL OR THE PROVISION OF APPRAISAL SERVICES TO THE NAMED CLIENT AND/OR INTENDED USER. THE REPORT AND INFORMATION SUPPLIED BY THE STAFF AND/OR AGENTS OF PETERSHEIM & LONGENECKER APPRAISAL, CO IS A CULMINATION OF INTELLECTUAL EDUCATION, PROFESSIONAL EXPERIENCE, PERSONAL INVESTIGATION, AND KNOW-HOW, WHICH SHALL AT ALL TIMES REMAIN THE PROPERTY OF  NO PETERSHEIM & LONGENECKER APPRAISAL, CO PERSON SHALL BE ENTITLED TO BREAK DOWN, STRIP OUT, MINE, OR DISSEMINATE ANY COMPONENT OR PART OF THIS REPORT, INCLUDING, BUT NOT LIMITED TO, ANY CONCLUSIONS, VALUATIONS, OPINIONS, OR OTHER DATA COMPILATIONS HEREIN.

(6) WORK PERFORMED
DURING THE VALUATION PROCESS, THE APPRAISER CONSIDERED ALL THREE APPROACHES TO VALUE. THE COST APPROACH TO VALUE IS BEST SUITED FOR RESIDENTIAL PROPERTIES, WHEN THE HOME IS NEW OR PROPOSED CONSTRUCTION, WITH NO FUNCTIONAL OR EXTERNAL OBSOLESCENCE. ONCE A HOME BEGINS TO AGE, ESTIMATES OF PHYSICAL DEPRECIATION MUST BE MADE. THESE ARE TYPICALLY SUBJECTIVE AND MEASURED AGAINST MARKET REACTIONS FOR SIMILAR AGED HOMES. IN THE CASE OF THE SUBJECT, THE COST APPROACH DID ADD SIGNIFICANTLY TO THE CREDIBILITY OF THE OPINION OF VALUE, THEREFORE IT WAS COMPLETED. THE DEVELOPMENT OF THE OPINION OF SITE VALUE CONSIDERED RECENT SALES IN THE AREA, AS NOTED IN THE COST APPROACH SECTION. THE SALES COMPARISON APPROACH TO VALUE IS BEST SUITED, FOR SINGLE FAMILY HOMES, WHEN THERE IS AMPLE MARKET ACTIVITY FOR SIMILAR TYPE PROPERTIES, FROM WHICH THE APPRAISER CAN MEASURE MARKET REACTIONS TO VARIOUS PROPERTY AMENITIES AND MAKE QUANTITATIVE ADJUSTMENTS TO COMPARABLE SALES. FOR SINGLE FAMILY HOMES, THE SALES COMPARISON APPROACH IS THE MOST CREDIBLE APPROACH TO VALUE AS THERE IS AMPLE MARKET ACTIVITY AND BEST REFLECTS TYPICAL BUYER AND SELLER ACTIVITY IN THIS MARKET. THE INCOME APPROACH TO VALUE IS BEST SUITED FOR PROPERTY TYPES THAT ARE BOUGHT AND SOLD FOR THEIR ABILITY TO PROVIDE A RETURN ON AND OF AN INVESTMENT, IN THE FORM OF AN INCOME STREAM, TO A BUYER. THESE INCOME STREAMS ARE TYPICALLY CAPITALIZED TO ESTIMATE A VALUE BY THE INCOME APPROACH. MOST SINGLE FAMILY HOMES IN THE SUBJECT AREA ARE BOUGHT FOR OWNER OCCUPIED USES AND NOT FOR THEIR INCOME POTENTIAL. DUE TO THIS, THE INCOME APPROACH WOULD NOT HAVE PROVIDED AN INCREASE IN THE CREDIBILITY OF THE OPINION OF VALUE, AND WAS NOT COMPLETED. THE APPRAISER DID REVIEW SALES, LISTINGS AND OTHER INFORMATION TO DEVELOP AN OPINION VALUE, HEREIN REPORTED. THE CREDIBILITY AND RELIANCE UPON EACH APPROACH IS DISCUSSED IN THE FINAL RECONCILIATION.

**ENVIRONMENTAL ADDENDUM**
**APPARENT\* HAZARDOUS SUBSTANCES AND / OR DETRIMENTAL ENVIRONMENTAL CONDITIONS**

PETERSHEIM & LONGENECKER APPRAISAL, CO

Case No.
File No. L-0865

| | |
|---|---|
| Borrower/ Client CHARLES H. HUNT & BERTHA HAMILTON | |
| Address: 801 CHARLES STREET | |
| City: COATESVILLE          County CHESTER          State: PA          Zip code: 19320 | |
| Lender    CHARLES H. HUNT & BERTHA HAMILTON | |

\*Apparent is defined as that which is visible, obvious, evident or manifest to the appraiser.

> This universal Environmental Addendum is for use with any real estate appraisal. Only the statements which have been checked by the appraiser apply to the property being appraised.

This addendum reports the results of the appraiser's routine inspection of and inquiries about the subject property and its surrounding area. It also states what assumptions were made about the existence (or nonexistence) of any hazardous substances and/or detrimental environmental conditions. The appraiser is not an expert environmental inspector and therefore might be unaware of existing hazardous substances and/or detrimental environmental conditions which may have a negative effect on the safety and value of the property. It is possible that tests and inspections made by a qualified environmental inspector would reveal the existence of hazardous materials and/or detrimental environmental conditions on or around the property that would negatively affect its safety and value.

## DRINKING WATER

☐ Drinking Water is supplied to the subject from a municipal water supply which is considered safe. However the only way to be absolutely certain that the water meets published standards is to have it tested at all discharge points.
☐ Drinking Water is supplied by a well or other non-municipal source. It is recommended that tests are made to be certain that the property is supplied with adequate pure water.
☐ Lead can get into drinking water from its source, the pipes, at all discharge points, plumbing fixtures and/or appliances. The only way to be certain that water does not contain an unacceptable lead level is to have it tested at all discharge points.
☐ The value estimated in this appraisal is based on the assumption that there is an adequate supply of safe, lead-free Drinking Water.

Comments _____

## SANITARY WASTE DISPOSAL

☐ Sanitary Waste is removed from the property by a municipal sewer system.
☐ Sanitary Waste is disposed of by a septic system or other sanitary on site waste disposal system. The only way to determine that the disposal system is adequate and in good working condition is to have it inspected by a qualified inspector.
☐ The value estimated in this appraisal is based on the assumption that the Sanitary Waste is disposed of by a municipal sewer or an adequate properly permitted alternate treatment system in good condition.

Comments _____

## SOIL CONTAMINANTS

☐ There are no apparent signs of Soil Contaminants on or near the subject property (except as reported in Comments below). It is possible that research, inspection and testing by a qualified environmental inspector would reveal existing and/or potential hazardous substances and/or detrimental environmental conditions on or around the property that would negatively affect its safety and value.
☐ The value estimated in this appraisal is based on the assumption that the subject property is free of Soil Contaminants.

Comments _____

## ASBESTOS

☐ All or part of the improvements were constructed before 1979 when Asbestos was a common building material. The only way to be certain that the property is free of friable and non-friable Asbestos is to have it inspected and tested by a qualified asbestos inspector.
☐ The improvements were constructed after 1979. No apparent friable Asbestos was observed (except as reported in Comments below).
☐ The value estimated in this appraisal is based on the assumption that there is no uncontained friable Asbestos or other hazardous material on the property.

Comments _____

## PCBs (POLYCHLORINATED BIPHENYLS)

☐ There were no apparent leaking fluorescent light ballasts, capacitors or transformers anywhere on or nearby the property (except as reported in Comments below).
☐ There was no apparent visible or documented evidence known to the appraiser of soil or groundwater contamination from PCBs anywhere on the property (except as reported in Comments below).
☐ The value estimated in this appraisal is based on the assumption that there are no uncontained PCBs on or nearby the property.

Comments _____

## RADON

☐ The appraiser is not aware of any Radon tests made on the subject property within the past 12 months (except as reported in Comments below).
☐ The appraiser is not aware of any indication that the local water supplies have been found to have elevated levels of Radon or Radium.
☐ The appraiser is not aware of any nearby properties (except as reported in Comments below) that were or currently are used for uranium, thorium or radium extraction or phosphate processing.
☐ The value estimated in this appraisal is based on the assumption that the Radon level is at or below EPA recommended levels.

Comments _____

PETERSHEIM & LONGENECKER APPRAISAL CO.

Case No.
File No.   L-0865

## USTs (UNDERGROUND STORAGE TANKS)

☐ There is no apparent visible or documented evidence known to the appraiser of any USTs on the property nor any known historical use of the property that would likely have had USTs.
☐ There are no apparent petroleum storage and/or delivery facilities (including gasoline stations or chemical manufacturing plants) located on adjacent properties (except as reported in Comments below).
☐ There are apparent signs of USTs existing now or in the past on the subject property. It is recommended that an inspection by a qualified UST inspector be obtained to determine the location of any USTs together with their condition and proper registration if they are active; and if they are inactive, to determine whether they were deactivated in accordance with sound industry practices.
☐ The value estimated in this appraisal is based on the assumption that any functioning USTs are not leaking and are properly registered and that any abandoned USTs are free from contamination and were properly drained, filled and sealed.

Comments _____

## NEARBY HAZARDOUS WASTE SITES

☐ There are no apparent Hazardous Waste Sites on the subject property or nearby the subject property (except as reported in Comments below).  Hazardous Waste Site search by a trained environmental engineer may determine that there is one or more Hazardous Waste Sites or in the area of the subject property.
☐ The value estimated in this appraisal is based on the assumption that there are no Hazardous Waste Sites on or nearby the subject property that negatively affect the value or safety of the property.

Comments _____

## UREA FORMALDEHYDE (UFFI) INSULATION

☐ All or part of the improvements were constructed before 1982 when UREA foam insulation was a common building material.  The only way to be certain that the property is free of UREA formaldehyde is to have it inspected by a qualified UREA formaldehyde inspector.
☐ The improvements were constructed after 1982. No apparent UREA formaldehyde materials were observed (except as reported in Comments below).
☐ The value estimated in this appraisal is based on the assumption that there is no significant UFFI insulation or other UREA formaldehyde material on the property.

Comments _____

## LEAD PAINT

☐ All or part of the improvements were constructed before 1980 when Lead Paint was a common building material. There is no apparent visible or known documented evidence of peeling or flaking Lead Paint on the floors, walls or ceilings (except as reported in Comments below).  The only way to be certain that the property is free of surface or subsurface Lead Paint is to have it inspected by a qualified inspector.
☐ The improvements were constructed after 1980. No apparent Lead Paint was observed (except as reported in Comments below).
☐ The value estimated in this appraisal is based on the assumption that there is no flaking or peeling Lead Paint on the property.

Comments _____

## AIR POLLUTION

☐ There are no apparent signs of Air Pollution at the time of the inspection nor were any reported (except as reported in Comments below).  The only way to be certain that the air is free of pollution is to have it tested.
☐ The value estimated in this appraisal is based on the assumption that the property is free of Air Pollution.

Comments _____

## WETLANDS/FLOODPLAINS

☐ The site does not contain any apparent Wetlands/Flood Plains (except as reported in Comments below).  The only way to be certain that the site is free of Wetlands/Flood Plains is to have it inspected by a qualified environmental professional.
☐ The value estimated in this appraisal is based on the assumption that there are no Wetlands/Flood Plains on the property (except as reported in Comments below).

Comments _____

## MISCELLANEOUS ENVIRONMENTAL HAZARDS

☐ There are no other apparent miscellaneous hazardous substances and/or detrimental environmental conditions on or in the area of the site except as indicated below:
  ☐ Excess Noise _____
  ☐ Radiation + Electromagnetic Radiation _____
  ☐ Light Pollution _____
  ☐ Waste Heat _____
  ☐ Acid Mine Drainage _____
  ☐ Agricultural Pollution _____
  ☐ Geological Hazards _____
  ☐ Nearby Hazardous Property _____
  ☐ Infectious Medical Wastes _____
  ☐ Pesticides _____
  ☐ Others (Chemical Storage + Storage Drums, Pipelines, etc.) _____

☐ The value estimated in this appraisal is based on the assumption that there are no Miscellaneous environmental Hazards (except those reported above) that would negatively affect the value of the property.

When any of the environmental assumptions made in this addendum are not correct, the estimated value in this appraisal may not be valid.

SUBJECT PROPERTY PHOTO ADDENDUM

File No. L-0865



FRONT VIEW OF
SUBJECT PROPERTY

Appraised Date: OCTOBER 5, 2012
Appraised Value: $ 117,000



REAR VIEW OF
SUBJECT PROPERTY



STREET SCENE



Petersheim &
Longenecker
APPRAISAL, CO.

PETERSHEIM & LONGENECKER APPRAISAL CO.

File No. L-0865



FRONT OF DWELLING



KITCHEN



LIVING



WATER SPOTS ON LIVING ROOM CEILING



YARD



REAR OF DWELLING



1 CAR DETACHED GARAGE



BEDROOM #1



BEDROOM #2



FINISHED BASEMENT



BEDROOM #3



FULL BATH

COMPARABLE PROPERTY PHOTO ADDENDUM

File No. L-0865



**COMPARABLE SALE #1**

919 HIGH STREET
COATESVILLE, PA 19320
Sale Date: 04/18/2012
Sale Price: $ 92,000



**COMPARABLE SALE #2**

301 RAINBOW ROAD
COATESVILLE, PA 19320
Sale Date: 04/26/2012
Sale Price: $ 93,000



**COMPARABLE SALE #3**

840 WALNUT STREET
COATESVILLE, PA 19320
Sale Date: 07/13/2012
Sale Price: $ 125,000



Petersheim &
Longenecker
APPRAISAL, CO.

FLOORPLAN SKETCH

File No. L-0865



| SKETCH CALCULATIONS | Perimeter | Area |
|---|---|---|
| **Living Area** | | |
| First Floor | | |
| A1 : 40.0 x 28.0 = | | 1120.0 |
| | | 1120.0 |
| Total Living Area | | 1120.0 |



Petersheim &
Longenecker
APPRAISAL, CO.

390 OLD LIMESTONE ROAD, PARKESBURG, PA  19365  717-413-9297

PLAT MAP

File No. L-0865



390 OLD LIMESTONE ROAD, PARKESBURG, PA  19365  717-413-9297

LOCATION MAP

File No. L-0865



390 OLD LIMESTONE ROAD, PARKESBURG, PA 19365  717-413-9297

PETERSHEIM & LONGENECKER APPRAISAL, CO

File No. L-0865

(GENERAL/SPECIAL WARRANTY DEED/INDIVIDUAL or CORPORATE)                    Order No.: 904690KP ()
                                                                                                    Page 1

Order No.: 904690KP ()
Property Address: 801 Charles Street, Coatesville, Pennsylvania 19320
Tax Parcel ID: 16-08-0001.040
City of Coatesville, Chester County

## THIS INDENTURE

Made the 23rd day of April, 2004., between Charles H. Hunt and Bertha Hunt (hereinafter called the Grantor(s)) AND Bertha Hamilton and Charles H. Hunt (hereinafter called the Grantee(s)).

Witnesseth, That the said Grantor(s) in consideration of One dollars ($1.00) paid to the Grantor(s) by the Grantee(s), receipt of which is hereby acknowledged, does (do) grant, bargain, sell and convey to the said Grantee(s), his, her, their heirs, personal representatives, its successors and assigns.

ALL THAT CERTAIN tract of land situate in the City of Coatesville, County of Chester, and Commonwealth of Pennsylvania consisting of Lot Number 4 on a Plan of Lots prepared for Michael, Ann and John Illes and dated 1/23/1974.

BEGINNING at a point in the North curb line of Charles Street and the Southwest corner of a right of way of the Octorara Water Company, thence extending along the North curb line of Charles Street South 71 degrees 13 minutes West 60 feet to a point; thence leaving said curb line North 18 degrees 47 minutes West 141.03 feet to a point in the dividing line of the City of Coatesville and Valley Township (also being the southerly right of way line for the Penn Central Railroad); thence along said dividing line North 71 degrees 17 minutes East 60 feet to a point, also being the Northwest corner of a right of way of the Octorara Water Company; thence leaving the said dividing line and extending along the right of way of the Octorara Water Company South 18 degrees 47 minutes East 140.44 feet to a point in the North curb line of Charles Street and being the point and place of beginning.

BEING PARCEL NO. 16-8-1.4



Being the same property indentured from John S. Przychodzien III and Lisa A. Przychodzien, dated 03-29-02, recorded on 04-03-02 as Record Book 5244 Page 727. And the said, Bertha Hunt has since married and is now known as Bertha Hamilton.  This transfer is solely for name verification purposes and is therefore transfer tax exempt.

Together with all and singular the buildings, improvements, ways, streets, alleys, driveways, passages, waters, water-courses, rights, liberties, privileges, hereditaments and appurtenances, whatsoever unto the hereby granted premises belonging, or in anywise appertaining, and the reversions and remainders, rents, issues, and profits thereof; and all the estate, right, title, interest, property, claim and demand whatsoever of the said Grantor(s), as well at law as in equity, of, in and to the same.

To have and to hold the said lot or piece of ground above described, hereditaments and premises hereby granted, or mentioned and intended so to be, with the appurtenances, unto the said Grantee(s), his, her, their, heirs, personal representatives, its successors and assigns, to and for the only proper use and benefit of the said Grantee(s), his, her, their, heirs, personal representatives, its successors and assigns, forever.

This Document Recorded                    DocId: 10413578
05/18/2004   State RTT: 0.00              Receipt #: 100861
10.05AM      Local RTT: 0.00             Rec Fee: 46.60
Doc Code: DEE Chester County, Recorder of Deeds Office

10413578
Page 1 of 3
B-6158 P-1946

RECORDER OF DEEDS



Petersheim &
Longenecker
APPRAISAL, CO.

390 OLD LIMESTONE ROAD, PARKESBURG, PA  19365   717-413-9297

PETERSHEIM & LONGENECKER APPRAISAL, CO

File No. L-0865

(GENERAL/SPECIAL WARRANTY DEED/INDIVIDUAL or CORPORATE)

Order No : 904690KP ()

Page 2

AND the said Grantor(s), and his, her, their, heirs and personal representatives, its successors does (do) covenant, promise and agree, to and with the said Grantee(s), his, her, their heirs, personal representatives, its successors and assigns, by these presents, that the said Grantor(s) his, her, their, heirs, and personal representatives, its successors, all and singular the hereditaments and premises hereby granted or mentioned and intended so to be, with appurtenances, unto the said Grantee(s), his, her their heirs, its successors and assigns, against the said Grantor(s) and his, her their heirs, its successors, and against all and every person and persons whosoever lawfully claiming or to claim the same or any part thereof, by, from or under any of them, shall and will warrant specially the property hereby conveyed.

10413578

B-6158 P-1946



Petersheim &
Longenecker
APPRAISAL, CO.

390 OLD LIMESTONE ROAD, PARKESBURG, PA 19365  717-413-9297

PETERSHEIM & LONGENECKER APPRAISAL, CO

File No. L-0865

(GENERAL/SPECIAL WARRANTY DEED/INDIVIDUAL or CORPORATE)

Order No : 904690KP ( )
Page 3

In Witness Whereof, the said Grantor(s) has (have) hereunto set his/her/its/their hands and seals. Dated the day and year first above written.

WITNESS:

Charles H. Hunt

Bertha Hunt

State of Pennsylvania
County of Chester      }

On this, the __23rd April 2004__, before me the undersigned officer, personally appeared **Charles H. Hunt and Bertha Hunt**, known to me (or satisfactorily proven) to be the person or persons whose name(s) is (are) subscribed to the within instrument, and acknowledged that he / she / they executed the same for the purposes therein contained.

In witness whereof, I hereunto set my hand and official seal.

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Neil V. Goldstein, Notary Public
Upper Merion Twp., Montgomery County
My Commission Expires Apr. 19, 2008
Member, Pennsylvania Association Of Notaries

Notary Public

**CERTIFICATE OF RESIDENCE**
I hereby certify that the precise residence of the grantee(s) herein is
**801 Charles Street, Coatesville, Pennsylvania 19320**

For Grantee(s)

Record and return to:
**First American Title Insurance Company
234 Mall Blvd The Atrium, 2nd Floor, King of Prussia, PA 19406**

10413578
Page 3 of 3
B-6168 P-1946
FIRST AMERICAN TITLE INSURANCE G     04/16/2004 13:58A



Petersheim &
Longenecker
APPRAISAL, CO.